DOCTOR'S MEDICAL CLINIC,
et al., Appellants,

v.

CITY OF JACKSON, Minnesota d/b/a
Jackson Medical Center, et al.,
Respondents.

Nos. C1–97–50, C4–97–527.

Court of Appeals of Minnesota.

Sept. 30, 1997.

Review Granted Dec. 16. 1997.

---

Jerry W. Blackwell, Halleland Lewis Nilan Sipkins & Johnson, P.A., Minneapolis, for appellants.

Lawrence R. King, Shawn M. Raiter, King & Hatch, P.A., St. Paul, for respondents.

Considered and decided by CRIPPEN, P.J., and PARKER and SHORT, JJ.

## OPINION

SHORT, Judge.

After the City of Jackson d/b/a Jackson Medical Center (JMC) revoked Dr. Gumersindo A. Alvero's hospital privileges, Alvero brought suit against the JMC and the individual members of the professional review committees (collectively, the hospital). On appeal from summary judgment, Alvero argues the trial court erred in: (1) concluding the hospital was immune from damages under the Health Care Quality Improvement Act; and (2) awarding the hospital attorney fees of $25,000.

## FACTS

Alvero, an internist with a sub-specialty in pulmonary medicine, began practicing at the JMC, a small municipal hospital, in 1978. When he formed the Doctor's Medical Clinic in 1981, Alvero resigned as a staff physician at the JMC, but retained his hospital privileges. However, at a medical staff meeting in 1994, a staff physician brought a formal motion to revoke Alvero's privileges, citing Alvero's interference with the care and treatment of the other physicians' patients, failure to take rotating call coverage, inability to maintain a cooperative working relationship with the staff and administration, and failure to submit patient care complaints regarding other physicians to the internal peer review process before reporting them to the state board of medical practice. Following discussion, the staff voted to recommend revocation.

As permitted by JMC bylaws, Alvero requested a hearing before a neutral panel and demanded that he be provided the factual basis for the specific charges against him. The JMC's chief executive officer set a hearing date for December 14. One week prior to the hearing, the medical staff's counsel wrote Alvero, advising him of the charges against him and of his procedural rights at hearing. The letter concluded,

if you have any questions * * * or have some objection to the timing or procedures outlined above, please contact me immedi-

ately. Otherwise, I will assume that we are prepared to proceed on December 14 at 7:00 p.m. in the manner described above.

Immediately before the hearing, Alvero advised the CEO in writing that the hearing was scheduled 41 days after the JMC's receipt of his hearing request, in violation of the bylaws' mandatory 40–day deadline. When the three neutral physicians composing the hearing panel decided to proceed with the hearing, Alvero refused to participate and departed. The panel heard four hours of testimony from staff doctors, nurses, and administrators, and held the record open for Alvero to submit a written statement and any other evidence he wished. After Alvero declined to submit any evidence, the panel unanimously voted to support the medical staff's recommendation to revoke Alvero's hospital privileges. On appeal to the JMC governing board, Alvero presented evidence and testified at length. After deliberation, however, the governing board decided to terminate Alvero's hospital privileges.

■ Three months later, Alvero and his clinic filed suit against the JMC and certain members of the professional review bodies, seeking monetary damages and an order restoring Alvero's hospital privileges. Concluding the hospital was immune from damages under the Health Care Quality Improvement Act and immune from injunctive relief under the state peer review immunity statute, Minn.Stat. § 145.63, the trial court ordered summary judgment in favor of the hospital and later awarded the hospital $25,000 in attorney fees. The trial court entered judgment on the orders separately, and Alvero timely appealed both judgments. *See American Family Mut. Ins. Co. v. Peterson,* 380 N.W.2d 495, 497 (Minn.1986) (stating period to appeal decision to award fees did not begin to run until amount of fees determined and reduced to final judgment). The hospital moved to strike the appendix to Alvero's reply brief. Because the appendix was prepared after trial solely for the purpose of appeal, we grant the hospital's motion, but we decline to award fees on the motion to strike. *See* Minn. R. Civ.App. P. 110.01 (providing record on ap-

peal consists only of papers filed in trial court, exhibits, and transcript); *Thomas v. Fey,* 376 N.W.2d 266, 269 (Minn.App.1985) (recognizing appellate court generally cannot consider evidence outside record).

## ISSUES

I. Did the trial court err in concluding the hospital was entitled to immunity under the Health Care Quality Improvement Act?

II. Did the trial court abuse its discretion in awarding the hospital attorney fees of $25,000?

## ANALYSIS

■ In reviewing an award of summary judgment under the immunity provision of the Health Care Quality Improvement Act (HCQIA or act), 42 U.S.C. §§ 11101–11152 (1994), we determine whether a reasonable jury, viewing the facts in the light most favorable to the physician, could conclude the physician has shown, "by a preponderance of the evidence, that the defendants' actions [were] outside the scope of § 11112(a)." *Austin v. McNamara,* 979 F.2d 728, 734 (9th Cir.1992); *see* 42 U.S.C. § 11111(a)(1) (providing limited immunity). We review a fee award under the HCQIA on an abuse of discretion standard. *Muzquiz v. W.A. Foote Mem. Hosp., Inc.,* 70 F.3d 422, 431–32 (6th Cir.1995).

### I.

Congress enacted the HCQIA both to provide for effective peer review of physicians and to grant qualified immunity from damages for those who participate in professional review activities. *Austin,* 979 F.2d at 733. In furtherance of the latter goal, the HCQIA provides that, if a professional review action meets certain due process and fairness requirements, the participants "shall not be liable in damages under any law of the United States or of any State (or political subdivision thereof) with respect to the action." *Id.* (quoting 42 U.S.C. § 11111(a)(1)).

A professional review action is protected by immunity if taken:

(1) in the reasonable belief that the action was in the furtherance of quality health care;

(2) after a reasonable effort to obtain the facts of the matter;

(3) after adequate notice and hearing procedures are afforded to the physician involved or after such other procedures as are fair to the physician under the circumstances; and

(4) in the reasonable belief that the action was warranted by the facts known after such reasonable effort to obtain facts and after meeting the requirement of paragraph (3).

42 U.S.C. § 11112(a). The HCQIA presumes these elements have been satisfied unless the physician rebuts the proposition by a preponderance of the evidence. *Id.; see Bryan v. James E. Holmes Reg'l Med. Ctr.*, 33 F.3d 1318, 1333 (11th Cir.1994) (noting HCQIA places burden on plaintiff to prove peer review process was unreasonable), *cert. denied*, 514 U.S. 1019, 115 S.Ct. 1363, 131 L.Ed.2d 220 (1995).

■■■ Viewed in the light most favorable to Alvero, the evidence fails to rebut the statutory presumption that the professional review bodies satisfied the substantive and procedural requirements of section 11112(a). The governing board found that Alvero's failure to report his colleagues' negligence to the peer review committee endangered the hospital's ability to provide timely and competent medical care, and that Alvero's inability to work cooperatively with the other physicians threatened the hospital's ability to function effectively and resulted in a hospital environment not conducive to quality patient care. Although the review bodies did not question Alvero's medical competence, the evidence supports only the conclusion the boards acted in a reasonable belief that the revocation of Alvero's privileges would further the JMC's ability to provide quality health care. *See* 42 U.S.C. § 11151(9) (defining "professional review action" as action taken "based on the competence or professional conduct of an individual physician") (emphasis added); *see also Schlein v. Milford Hosp.*, 423 F.Supp. 541, 544 (D.Conn. 1976) (recognizing doctor's ability to work well with others could significantly affect standard of care provided to patients and concluding hospital may consider more than physician's technical medical skills in making staff privileges decisions), *aff'd sub nom. Schlein v. Milford Hosp., Inc.*, 561 F.2d 427 (2d Cir.1977); *see, e.g., Yarnell v. Sisters of St. Francis Health Servs., Inc.*, 446 N.E.2d 359, 361, 363 (Ind.Ct.App.1983) (concluding physician's threatening and abusive behavior toward staff and general disruptiveness of hospital procedures justified revocation of privileges).

■■■ Furthermore, Alvero failed to offer evidence that the hospital revoked his privileges without investigation sufficient to satisfy HCQIA standards. Both the neutral hearing panel and the governing board heard three to four hours of live testimony concerning Alvero's professional conduct before rendering their decisions. Evidence that the hospital failed to follow strictly JMC bylaws regarding peer investigation procedures cannot support a conclusion that the hospital acted "without a reasonable effort to obtain the facts of the matter," so as to forfeit the protection of immunity under the HCQIA. *See Mathews v. Lancaster Gen. Hosp.*, 87 F.3d 624, 637 (3d Cir.1996) (examining reasonableness of health care entity's fact-finding efforts independently of entity's internal rules).

■■■ A health care entity is conclusively presumed to have afforded a physician "adequate notice and hearing procedures" if it provided the protections listed in section 11112(b), the safe harbor provision of the act. 42 U.S.C. § 11112(b). Alvero does not dispute that the hospital provided him: (1) a statement of reasons for the proposed professional review action; (2) notice of his right to a hearing before a neutral panel and of his procedural rights in appearing before that body; (3) notice of the time, date and place of the hearing and a list of the medical staff's potential witnesses; (4) the opportunity to be heard by the neutral panel, to be represented by counsel, to testify, to examine and cross-examine witnesses, and to submit a final written statement; (5) the hearing panel's written report and recommendation that his hospital privileges be revoked; (6) notice of

his right to appeal to the JMC's governing board; (7) the opportunity to testify at the appellate hearing before the governing board; and (8) a lengthy opinion supporting the board's final decision to revoke Alvero's privileges. Thus, even viewing the evidence in the light most favorable to Alvero, the hospital's actions fell squarely within the safe harbor provision of the HCQIA, and Alvero received "adequate notice and hearing procedures" before having his privileges revoked. *See id.* (listing safe harbor requirements). This result is not affected by Alvero's failure to avail himself of certain procedural rights or the hospital's failure to comply with JMC bylaws concerning professional review procedures. *See id.* (providing health care entity is deemed to have provided adequate notice and hearing procedures if listed conditions are met or voluntarily waived); *Islami v. Covenant Med. Ctr., Inc.,* 822 F.Supp. 1361, 1377 (N.D.Iowa 1992) (concluding hospital's conduct failed to comply with bylaws or fit within statutory safe harbor provisions).

■ Finally, Alvero failed to offer evidence that the hospital revoked Alvero's medical privileges without a "reasonable belief that the action was warranted by the facts." Although Alvero alleges personal animus by certain members of the review bodies, bad faith is immaterial to the analysis of immunity under the HCQIA. *See Austin,* 979 F.2d at 734 (stating plaintiff's assertions of hostility were irrelevant to standards of section 11112(a), which poses objective test). Instead, the pertinent question is the sufficiency of the basis for the professional review bodies' actions, considering the totality of the circumstances. *See Mathews,* 87 F.3d at 635 (directing consideration of totality of circumstances); *Austin,* 979 F.2d at 734 (concluding real issue was whether defendants had sufficient basis for suspending physician, regardless of personal hostility). In view of the substantial record testimony supporting the hospital's actions, Alvero has not presented evidence sufficient to permit a jury to conclude he had proved, by a preponderance of the evidence, that the review bodies had insufficient bases for recommending Alvero's suspension and ultimately revoking his privileges. *See Bryan,* 33 F.3d at 1337 (forbidding appellate courts from reweighing evidence considered by peer review panel or substituting its own judgment). Because Alvero failed to rebut the presumption that the hospital's professional review actions are protected by immunity under the HCQIA, the trial court properly granted summary judgment for the hospital on all of Alvero's claims for damages. We need not reach Alvero's arguments concerning his motions for a temporary injunction or for leave to amend his complaint to add a punitive damages claim, as we decide against him on the merits of his action.

## II.

■ The Health Care Quality Improvement Act provides for the award of reasonable attorney fees if: (1) the defendants were among persons covered by the act; (2) the defendants met the standards for professional review actions set forth in 42 U.S.C. § 11112(a); (3) the defendants substantially prevailed; and (4) the physician's claims or conduct were frivolous, unreasonable, without foundation, or in bad faith. 42 U.S.C. § 11113; *see Mathews,* 87 F.3d at 642 (quoting *Wei v. Bodner,* 1992 WL 165860, at *2 (D.N.J. Apr.8, 1992), *aff'd,* 983 F.2d 1054 (3d Cir.1992), and delineating statutory requirements). This fee-shifting provision was intended to "discourage frivolous suits by physicians disciplined in peer review proceedings." *Mathews,* 87 F.3d at 633.

■ Alvero argues the trial court abused its discretion in awarding the hospital attorney fees. Conversely, the hospital argues the trial court impermissibly limited the award to only $25,000 of its $137,000 in fees claimed. The record demonstrates: (1) the trial court made findings that the hospital was covered by the act, had complied with the standards of 42 U.S.C. § 11112(a), and had prevailed, and that Alvero's lawsuit against the hospital was "without foundation"; (2) the court ordered the hospital to submit an affidavit of attorney fees, delineating the fees specifically related to the HCQIA litigation; (3) in its affidavit, the hospital attributed only $2,800 of its total fees to legal services unrelated to issues un-

der the HCQIA; and (4) the trial court found "at least $25,000" of the hospital's $137,000 in fees were connected with the HCQIA litigation. Given the hospital's affidavit, the trial court could conclude that a large part of the hospital's fees arose generally from the defense of Alvero's contract and tort claims, rather than from the hospital's efforts specifically to obtain the protection of HCQIA immunity. Under these circumstances, the trial court did not abuse its discretion either by awarding fees in the first instance or by limiting the award to $25,000.

## DECISION

Alvero failed to rebut the statutory presumption that the professional review bodies complied with the substantive and procedural standards set forth in the Health Care Quality Improvement Act. Therefore, the act's immunity provision shields the hospital from liability for damages, and the trial court properly ordered summary judgment against Alvero. Furthermore, the trial court's award to the hospital of $25,000 in attorney fees does not constitute an abuse of discretion. We grant the hospital's motion to strike the appendix to Alvero's reply brief because the appendix was prepared solely for his appeal.

**Affirmed and motion to strike granted.**